May it please the Court. My name is Ted Kastman. Good morning. I represent Appellant John Thomas. With the Court's permission, I'd like to preview the four points that I intend to address in my brief time available, and if the Court wants to direct me to one of the four issues specifically, I'll go there. The first issue is that Respondent contends that application of the presumption of prejudice is inconsistent with the Brecht Standard of Review, such that the presumption cannot be applied on federal habeas review of a State conviction as we have here. It's our position that there is no such inconsistency. Second, Respondent argues that the presumption of prejudice is limited to cases involving governmental intrusion as opposed to the jury's independent receipt and consideration of extrinsic evidence. It is our position that the presumption is not so limited, that their position is inconsistent with the language and holding in Turner v. Louisiana, which is the leading case in this area, and that there is no principal distinction between governmental intrusion cases and extrinsic evidence cases such as is before the Court. Third, it's our position that the District Court erroneously concluded that the jury's misconduct in this case did not prejudice its verdicts on the six remaining counts because at the time of the improper experiment in this case, the jurors had already taken informal votes on the first six counts. The District Court raised that fact to the level of some return of verdict, which of course is not what occurred in this case, and therefore we submit the Court's ruling as erroneous. Fourth, whether the District Court erroneously concluded that our claims of prejudice are speculative because, as it's stated, they affected only Marcus McFadden's credibility and only on the four counts that were dismissed. Obviously, we believe that's erroneous, and we think that the District Court and all of the state courts failed to evaluate the alleged error in this case in the context of the arguments of counsel. No one until today has paid attention to the fact that both defense counsel and the prosecution placed Marcus McFadden at the center of their cases and asked the juries for an all-or-nothing, up-or-down vote on all the counts. They hung together or — Did McFadden testify about any of the other counts? He was the alleged victim in counts five and six. So, yes, he was the — But those are the counts that went out. No, Your Honor. They dismissed counts seven through ten. Seven through ten. And this is inexplicable, actually, Judge Goodwin. When the trial court made its ruling, he said, I'm going to grant a new trial as to the McFadden counts. And as a logical matter, that would include counts five and six. But then he went ahead and sentenced him on counts five and six. So there's some confusion there in my own mind. I think as a logical matter, you could not possibly argue that there was no prejudices to counts five and six. Nevertheless — and I think that the Court understood that, perhaps, but nevertheless went ahead and sentenced him on counts five and six. So I think that Judge Goodwin directly and obviously, there is prejudice. We don't need any presumption of prejudice. Under the court's holding down below, they said that the jury was intending to test the credibility of Marcus McFadden. And if that's true, then counts five and six were directly and irrevocably implicated. Turning to the first issue, prejudice and breadth. Our position is actually rather simple. Our position is that as a matter of federal law stemming from Turner v. Louisiana, there is a presumption of prejudice when the jury considers extrinsic evidence that is material to an issue in the case. That indisputably occurred in this case. And it's clear that the lower courts should have invoked a presumption of prejudice. The trial court didn't do that, clearly. And then the court of appeal applied an abuse of discretion standard to the trial court's ruling, which exacerbated the situation. They didn't apply a presumption of prejudice. They deferred to the trial court's decision. So that doubled the error. On habeas review, the appropriate standard then is to evaluate what occurred in the courts below as though the presumption had been properly invoked by those courts, and then determine whether a respondent has in fact presented evidence that would have reasonably rebutted that presumption had it been properly invoked. And so that's why under breadth we submit that the presumption does come into play. I'll turn to my second point, and I'll just very briefly do this. Turner v. Louisiana is the leading case in the area. There's numerous cases following it which tend to be true. They frequently involve what respondent refers to as governmental intrusion, where an agent who's testified in the case somehow ends up talking to one or more of the jurors about the case or something like that. But there's also numerous cases from Marino and Littlefield, and the other cases cited in our brief, which involve extrinsic evidence in a purer, more independent note, and which seemingly appear to have invoked the presumption of prejudice. And they're all cited in our brief. But the reason there can be no principal distinction between what they refer to as governmental intrusion cases and what we refer to as extrinsic evidence cases is because the holding in Turner v. Louisiana was not that, oh, we have a situation here where the government intruded upon the jury's deliberations. Instead, the court said, quote, the requirement that a jury's verdict must be based upon the evidence developed at the trial goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury. And then they said it violates the full panoply of rights from the defendant's right of cross-examination and confrontation to counsel. And so the holding was that the intrusion in that case violated those rights because there was extrinsic evidence considered by the jury. And the nature of that intrusion, the fact that it was governmental, is one of the things that made it material to the issues that were in the case. The third point. The jury returned not a single verdict before this improper experiment was conducted. We all know that jurors frequently take preliminary votes, and we all know that as a matter of law, the deliberations are not terminated until that jury returns to open court, submits a verdict to the judge, and the judge pulls the jury and dismisses them. Until that moment, the deliberations are continuing. And so it is not I who asked the court to speculate on possible effects of this experiment. It is respondent who asked the court to speculate that their deliberations were terminated. Now, the jurors may themselves have believed they were terminated. The jurors may have said, well, we took votes on 5, 1 through 6, and we were done with those counts. But the fact of the matter is they cannot know, and they can't know that they're wrong as a matter of law, that deliberations were not terminated. Turning to my last point, the Marcus McFadden, and at pages 10 through 12 of our opening brief, we extensively set forth counsel's arguments to the jury. And I exhort the court, please, to look at that again, because once the court does, you will see that both the prosecution and the defense made Marcus McFadden the center post of their cases. They both argued up and down on all the counts based on his testimony and his credibility, and they both acknowledged that he was the instigator for all of the charges against my client, not just counts 5 through 10 in which Marcus was directly involved. It is a fact that all of the complaining witnesses were friends, that Marcus was the instigator that brought them all to the police, and that Marcus himself had an opportunity, as he testified, to be alone with those young people before they actually were interviewed by the police. We submit this isn't speculation. These are facts. There is a presumption of prejudice that should have come into play, and it has not been rebutted. And I'll reserve a couple minutes. All right. That's fine. Thank you. Thank you. Good morning. May it please the Court. Morris Bates for Appellee, State of California. First, listening to the argument about the presumption of prejudice in a federal habeas corpus case involving a state judgment, I'm curious to know what the United States Supreme Court authority provides for a presumption of prejudice on a collateral attack under the AEDPA. I know of none, and there is none. The standard of review for harmless error or prejudice in this case is Brecht. Brecht requires that there be a substantial and injurious effect or influence in determining the jury's verdict from the error. There is none here. The argument is that it's possible that a jury may have changed its mind after voting to convict the defendant petitioner on the first six counts. Certainly it is possible. Is it reasonably possible? Probably not. Is it substantially likely? No. The fact of the matter is that the jury voted to find the defendant petitioner guilty on the first six counts before it engaged in misconduct in undertaking an experiment. The state conceded that there was jury misconduct involved? Yes. You conceded that in the trial court? Of course. And you conceded here? We conceded it was found to be misconduct and error by the trial court. Court of appeal affirmed? You agreed with that. I agree with that. There's – well, it's irrelevant at this point. Absent that concession, I'm not sure it's misconduct. In other words, suppose, instead of an easel and one of the jurors sat on the chair and said, well, this is how it was done. Is that extrinsic evidence? Judge, I only can defend the state court judgment in this case. And the state court judgment, the court of appeal, affirmed by the California Supreme Court, found that there was error but that it was harmless. If I were to argue it again, I would say, no, it wasn't. The doctrine doesn't apply that the state court can be affirmed by any ground supported in the record, regardless of whether that was a reasoning of the state court or not? Well, if the court finds that there – or feels that there was no error, I'm certainly happy to join in your opinion. I'm asking you for your position. Our position is to defend. Our position is that there was error. I mean, there was misconduct. Our position is that whatever there was, Your Honor, it was harmless. That's the only argument that we've made to date. That's the only argument that we're pursuing here. The jury voted to convict him on the first six counts before it ever engaged in any misconduct or before any error occurred. By the way, were the other counts ever retried? Do you know? No, they were not. So counts 7 through 10 were reversed by the state court and dismissed. And the state court found no prejudice as to counts 1 through 6. The district court also found no prejudice through counts 1 through 6. Our position is there was no prejudice with respect to the jury findings of guilt as to counts 1 through 6. And, frankly, I have very little more to say other than you have to apply Brecht. And unless the court has any questions. Court, backwards for a second. Sure. Let's assume that you applied Brecht. You're looking for a substantial and injurious effect. Yes. And I should pause, but I'm not sure what's part of the public record and what not. So I'll say that the complaining witness with regard to counts 5 through 10, I guess in the California decision they used the initial M. Right. I believe Marcus M. I'll use the word Marcus. He's the person that testified in a way that led the jury to do their demonstration to find out if it was physically possible. That's correct. If the jury had not done that demonstration and the jurors who were skeptical about the physical possibility of the act that had been described decided that, well, we just can't believe that, isn't there at least some possibility those jurors would have gone back and said, now that we think about it, we've said we'd vote to convict on counts 5 and 6, but we don't think Marcus was telling the truth. So maybe those convictions we're not going to vote to uphold when it comes time to fill out the final form either. And I think that's the theory being offered up by the petitioner. Well, what do you have to say about that? Well, first of all, the jury found him guilty of counts 5 and 6, which are the. Well, it did. But it did in the context where they did the demonstration. What I'm saying is that they hadn't done. I know they've gone through their vote before. But it is true that in a legal sense, the verdict's not final until it's been turned in. And certainly jurors are allowed to have second thoughts. And so if the jurors who were skeptical about the physical possibility of what was testified to did not see the demonstration and as a result did not satisfy their concerns, is there at least a realistic, is there a possibility that that's more than hypothetical? Those jurors would have had second thoughts about Marcus's credibility generally. Because if they don't believe Marcus, they can't convict on counts 5 and 6. Well, if they undertook no experiment, which was the error. So let's assume we eliminate the error, which is how we determine whether there was prejudice. Why would they change their votes as to 1, 2, 3, 4, 5, 6? Because they keep talking and they come to decide, well, no, that's just not possible. So we don't believe the story he told. Why would they say that? Well, something led them to do the demonstration. They were talking and discussing and deliberating on counts 7 through 10. Right. And that's what the experiment was about. Right. They had no question as to counts 1 through 6. That's why I paused. And I paused first on counts 5 and 6. Because count 5 and 6, without Marcus's testimony being believed, I don't think there can be a conviction on counts 5 and 6. Correct. And so if they don't satisfy their concerns, speaking of the potential holdout jurors, or they don't satisfy their concerns about the physical possibility of what's covered in counts 7 through 10, the demonstration, then is it realistic to say they might have second thoughts about, well, you know, if that's not true, then what he told us about those other things might not be true either. Well, is it realistic? I don't think so, because they found it would be on a reasonable doubt when they voted to convict him of counts 5 and 6 that he was guilty. All right. They had no reasonable doubt when they voted. Why wouldn't they have a reasonable doubt if they had undertaken no experiment? Let me move one step further to counts 1 through 4. Your colleague has argued that both sides made Marcus the centerpiece of this production. Suppose we would conclude, and this is purely hypothetical, but suppose we conclude that while there may be a problem with counts 5 and 6, does that necessarily go to counts 1 through 4, or do you say those are distinguishable? Well, they're different victims. And, again, I hate to repeat myself, but the jury found, beyond a reasonable doubt, in its vote before the experiment that he was guilty of counts 1, 2, 3, 4, 5, and 6. It then undertook an experiment with respect to counts 7 through 10 because it had a question in its mind about its credibility with respect to those counts. If that experiment had not been undertaken, why, under any analysis, would there have been a change in the opinion in the vote as to counts 1 through 6? Well, 5 and 6 I think is pretty easy to say. If they come to conclude that Marcus isn't credible, then there's a real easy possibility of second thoughts about 5 and 6. I'm not saying that that's the case here, but I don't know that it can be dismissed. It's not conceivable. I think it's conceivable. It may not be a realistic possibility. Judge, everything is conceivable. And that's why we have the Brecht standard because it requires more than conceivability. It requires more than reasonable possibility. That's the Chapman standard. Under habeas corpus, you've got to give a little bit more deference to the state judgment. And unless you can show that there is a substantial and injurious effect on the jury findings as to counts 1 through 6, then that judgment has got to be affirmed. And there is no reasonable possibility, even if we apply the Chapman standard. And if we apply the Brecht standard, I don't see any basis for relief. Again, the first six counts were found to be ‑‑ the defendant was found to be guilty after those first six counts, beyond a reasonable doubt, because there was a vote taken. Now, what is it that would have changed their mind if no experiment had been undertaken? Absolutely nothing that I can understand, nothing that I have heard from either the court or from opposing counsel. On that note, I'll submit here. Okay. Thank you, Mr. Davis. Rebuttal? Thank you, Your Honor. Judge Clifton, I believe that you were hitting the nail on the head from the defense perspective. I'd like to say briefly, I misspoke when I gave the court pages in our brief that refer to the closing arguments of counsel. They were reformatted for the papers I had. And actually it's pages 16 through 20 of our brief that sets forth the extensive arguments of counsel on Marcus McFadden and the role that, in counsel's view, the jury should consider it played in the case. Votes were taken by the jury that is of no legal significance as to whether there was a verdict. In this case, an experiment was conducted that directly impacted the credibility of the central witness in the case. For counts 5 through 10, the only witness in the case, and for the other four, a central witness in the case. Credibility of a witness is a central issue in every case. It was the central issue in this case. And for the lower courts to have attempted to parse out the effect of that credibility and to say, well, it only affected some of the counts and not others, we submit that's just an inaccurate and not proper evaluation of the case. With regard to the presumption, again, I think it's clear that under Turner v. Louisiana it is in play and it should have been invoked by the state courts. They didn't invoke it, and therefore, under Brecht, that's part of the error that this Court must review. Thank you. Okay. Thank you. I thank both counsel. This case is submitted for decision.
judges: Goodwin, Tashima, Clifton